```
                                                                    1

 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA       :      12-CR-68 (DLI)
 4
         -against-                         U.S. Courthouse
 5                                  :
                                           Brooklyn, New York
 6   JOANNA FAN
     ZIMING SHEN
 7
                     Defendants     :
 8                                         September 4, 2012
     - - - - - - - - - - - - - - - - X     3:15 p.m.
 9

10   BEFORE:
              HONORABLE DORA L. IRIZARRY
11            United States District Judge

12

13   APPEARANCES:

14   For the Government:         LORETTA E. LYNCH
                                 United States Attorney
15                               271 Cadman Plaza East
                                 Brooklyn, New York 11201
16                           BY: DANIEL SPECTOR
                                    Assistant U.S. Attorney
17

18   For the Defendant:          MARTIN B. ADELMAN
     Joanna Fan                  225 Broadway
19                               Suite 1804
                                 New York, New York 10007
20

21   Curcio Counsel:             JOYCE C. LONDON
     Joanna Fan                  20 Vesey Street
22                               Suite 400
                                 New York, New York 10007
23

24

25


                  RONALD E. TOLKIN, RPR, RMR, CRR
                       OFFICIAL COURT REPORTER
```

```
 1  For the Defendant:       BARRY W. AGULNICK
    Ziming Shen              8 Bond Street
 2                           Suite 303
                             Great Neck, New York
 3

 4

 5  Curcio Counsel:          LUCAS E. ANDINO
    Ziming Shen              445 Park Avenue
 6                           9th Floor
                             New York, New York 10022
 7

 8

 9  For the Defendants:      MORVILLO, ABRAMOWITZ, GRAND, IASON,
    Fan and Shen             ANELLO & BOHRER, P.C.
10                           565 Fifth Avenue
                             New York, New York 10017
11                           BY:  ROBERT M. RADICK
                                  DAVID J. STANKIEWICZ
12

13

14  Court Reporter:          RONALD E. TOLKIN, RPR, RMR, CRR
                             Official Court Reporter
15                           225 Cadman Plaza East
                             Brooklyn, New York 11201
16                           718-613-2647

17

18                   * * *

19

20       THE COURT:  I am not going to keep you any longer

21  than we have to.  This is United States versus Fan and Shen.

22  Docket number 12-CR-68.  This is on to resolve a Curcio issue.

23       Can we have the parties appearance, please, for the

24  record.

25       MR. SPECTOR:  Good afternoon, Your Honor.
```

U.S.A. v. FAN and SHEN                                    3

1       Daniel Spector, for the government.
2       THE COURT:  If I can still have retained counsel
3  first on behalf of Ms. Fan?
4       MR. ADELMAN:  Martin Adelman, A-D-E-L-M-A-N.
5       Good afternoon, Your Honor.
6       THE COURT:  On behalf of Mr. Shen?
7       MR. AGULNICK:  Barry Agulnick, A-G-U-L-N-I-C-K.
8       Good afternoon, Your Honor.
9       THE COURT:  Good afternoon.
10      Proposed new counsel, please.
11      MR. RADICK:  Good afternoon, Your Honor.
12      Robert Radick of Morvillo Abramowitz.  And with me
13 is David Stankiewicz.
14      MR. STANKIEWICZ:  David Stankiewicz,
15 S-T-A-N-K-I-E-W-I-C-Z.
16      THE COURT:  We also have Curcio counsel who are here
17 for Ms. Fan.
18      MS. LONDON:  Good afternoon, Your Honor.
19      Joyce London, Curcio counsel.
20      THE COURT:  Good afternoon.
21      Curcio counsel for Mr. Shen?
22      MR. ANDINO:  Lucas E. Andino, A-N-D-I-N-O.
23      Good afternoon, Your Honor.
24      THE COURT:  Good afternoon to Ms. Fan and Mr. Shen.
25      Again, my sincerest apologies for keeping you all

1  waiting.
2             Just so that we cue up the record to where we were
3  the last time that we met, we had discussed some concerns that
4  were raised both by the government and the Court with respect
5  to Ms. Fan and Mr. Shen's desire to be represented by the same
6  counsel.  That would be Mr. Radick and the firm that he just
7  mentioned, to replace previous counsel, which are Mr. Adelman
8  and Mr. Agulnick.
9             The last time that we were here, the Court had
10 appointed Curcio counsel for Ms. Fan and Mr. Shen.  The Court
11 had explained to both Ms. Fan and Mr. Shen the consequences of
12 being represented by the same attorney at a very critical
13 stage, which is the sentencing stage.  And there may be, of
14 course, different interests that each defendant may have and
15 the potential conflict that could be presented by being
16 represented by the same attorney.
17            I think at the end of the hearing we were all in
18 agreement that it was a conflict that could be waivable.  But
19 I thought it prudent to give the defendants each an
20 opportunity to consult with independent counsel about their
21 right to be represented by conflict free counsel, if that
22 conflict is a potential one and not necessarily an actual one.
23            Ms. London, did you have time to consult with your
24 client in that regard?
25            MS. LONDON:  Yes, I have, Your Honor.

1     Just for the record, I received copies of the plea
2 transcript and the plea agreements.  We have reviewed those
3 and discussed those with her.
4     THE COURT:  Mr. Andino, you also?
5     MR. ANDINO:  Yes, Your Honor.  I received from
6 Mr. Radick copies of the plea agreement and the transcript and
7 the complaint and other documents in the docket in the case,
8 and have discussed those with him.
9     THE COURT:  Ms. Fan, do you understand everything
10 that we discussed the last time that we were here?
11     DEFENDANT FAN:  Yes, I do.
12     THE COURT:  Having had the opportunity to consult
13 with Ms. London on this matter, how do you wish to proceed?
14     DEFENDANT FAN:  I understand that there will be a
15 potential conflict.  But I will waive my rights with
16 Mr. Radick for any conflict I have in the future.  Also, I
17 understand that the lawyers will be divided but that is fine.
18     THE COURT:  Okay.  So you understand that there
19 could be this possible conflict.  That there is a possibility
20 that there could be some defenses that you might be able to
21 raise on your behalf that might conflict with defenses for
22 Mr. Shen.  But you are willing to waive that potential
23 conflict, is that correct?
24     DEFENDANT FAN:  Correct.
25     THE COURT:  Has anyone forced you or threatened you

U.S.A. v. FAN and SHEN                                        6

1   in any way to make that decision?
2           DEFENDANT FAN:  Not at all.
3           THE COURT:  Mr. Shen, what is your desire?
4           DEFENDANT SHEN:  Yes, I have same desire as my wife,
5   to have Mr. Radick to represent the both of us.  I understand
6   that I have a potential conflict but I wish to retain
7   Mr. Radick anyway.
8           THE COURT:  So the same as I asked Ms. Fan, you are
9   willing -- as I understood what you're telling me is that you
10  are willing to waive any potential conflict that there might
11  be based on potential defenses that Mr. Radick could present
12  on your behalf at the time of sentencing.  You're willing to
13  waive that potential conflict, is that correct?
14          DEFENDANT SHEN:  Yes, Your Honor.
15          THE COURT:  Did anyone force you or threaten you in
16  any way to make that decision?
17          DEFENDANT SHEN:  No.
18          THE COURT:  Mr. Shen, do you believe that you
19  completely understand what's at issue here?
20          DEFENDANT SHEN:  Yes, Your Honor.
21          THE COURT:  Do you feel that you have had sufficient
22  time to discuss this independently with Mr. Andino?
23          DEFENDANT SHEN:  Yes.  We had a lot of conversation.
24          THE COURT:  Ms. Fan, I didn't ask you that.  Do you
25  feel that you had sufficient time to discuss this potential

RONALD E. TOLKIN, RPR, RMR, CRR
OFFICIAL COURT REPORTER

U.S.A. v. FAN and SHEN 7

1  conflict with Ms. London?
2      DEFENDANT FAN: Yes.
3      THE COURT: I'm relieving with the thanks of the
4  Court Mr. Agulnick and Mr. Adelman. Again, my sincerest
5  apologies for today's snafu. I do appreciate that you waited
6  around until we could rectify this. So you're relieved from
7  this case with the thanks of the Court, and I'm sure with the
8  thanks of your client.
9      I want to thank Curcio counsel, Ms. London and
10 Mr. Andino. You're both also relieved. Again, also with the
11 thanks of the Court. Thank you.
12     So what I would like to do at this point -- and I
13 don't want to keep counsel any further. So you're excused if
14 you have other places to be. I'm sure you do.
15     MR. ANDINO: Thank you, Your Honor.
16     THE COURT: Thank you again. Thank you very much.
17 I think we're in a better position.
18     Mr. Shen, why don't you move up so you're a little
19 closer. You look like you're far away there.
20     We can speak, I think, a little more intelligently,
21 if you will, about scheduling as far as sentencing is
22 concerned.
23     The presentence report had been held in abeyance
24 pending the outcome of some sort of a grounding, if you will,
25 as to, or a determination as to what the loss amounts were

RONALD E. TOLKIN, RPR, RMR, CRR
OFFICIAL COURT REPORTER

1  going to be that were involved here, that were going to guide
2  the -- that was going to form the basis for the loss
3  guidelines calculation, if I recall correctly.
4  So where is that at this point?
5  MR. RADICK: If I may, Your Honor.
6  When we were here last, we indicated that we had
7  been reviewing the documents. There are eighty or more boxes
8  of documents that were in Bethpage that the government seized
9  upon executing a warrant. And we were doing that right up to
10 the very last day that the Court had set, and were copying and
11 sent a number of documents which have since been given to a
12 forensic accountant who has been retained to help us in
13 analyzing those documents and assessing the government's loss
14 estimate.
15 To give the Court a sense of generally what the
16 forensic accountant is doing, the loss estimate in this case
17 is based upon the analysis of bank records for a roughly
18 five-year period, and assesses how much was transferred from
19 Red Apple to another entity and then, in turn, how much of
20 that was spent on food.
21 We think that there may be, actually, a significant
22 amount more to the story and to the loss analysis that
23 includes money that was spent on food that didn't go through
24 those accounts. And as reflected in voluminous number of
25 receipts for food and other food expenditures that are

1  allowable under the CACFP.
2         So what the forensic accountant is doing now is
3  going through those records one-by-one and charting them out
4  so that we have a sense as to what those numbers are.  Because
5  we think those may actually provide an offset, depending on
6  what we find, to the government's loss estimate.
7         Now, I've spoken, as of yesterday, with the forensic
8  accountant.  Given the volumes of the materials that we're
9  talking about, which are extensive, and the need to do a
10 thorough job so everyone can rely on it, us, the government
11 and the Court, he's indicated to me it's a process that he
12 anticipates will take until mid October.  To go through all of
13 those receipts, chart out the numbers and then be able to talk
14 with us about what they reflect.
15        So that's the general starting point for our time
16 frame.  We would request that we be allowed, given the
17 critical nature of this stage, the sentencing stage, and the
18 amount of documents, to allow that process to run its course
19 so that we can all be relying on accurate loss information.
20 And we can then discuss with the government any issues that we
21 may have and see if we can reach agreement.
22        THE COURT:  One question that pops up in my mind as
23 you're describing the types of accounts to which monies may
24 have gone or may have been disbursed into, which would include
25 food accounts.

1   Now, obviously there are food accounts and then
2   there are food accounts.  There are food accounts for which
3   the money was designated that they should go.  But I mean, if
4   it's money that's going for food that's not going for what the
5   program monies were designated for, which was to provide food
6   for school children, then that is a different story.
7   I don't know how -- obviously I haven't seen these
8   documents.  So I don't know how notations are made on them,
9   how they can be distinguished in terms of knowing how to
10  separate, just very simply, money that goes for food just
11  generally and money that goes for food as it was intended
12  pursuant to the program.
13  MR. RADICK:  Right.  That would be something that we
14  would look at the documents for.  Many of them, in fact, say
15  that they are for food purchases for Red Apple instead of
16  schools for which the government food program money was
17  provided.  And so if those food purchases are for, in fact,
18  the Red Apple students then that would be a permissible food
19  expenditure, in our view.
20  Plus, as I mentioned, there are other allowable
21  expenses under the CAFCP, not just for food, and other
22  expenditures that the rules permit.  So we would be looking at
23  these records and determining if -- you're correct to point
24  out, if the money was spent on food and food related expenses
25  for the Red Apple schools.

1           With respect to these specific accounts, I would
2  just note, and this may address one point the Court made,
3  which is that the CACFP did not require Red Apple to maintain
4  a segregated account until later in the time period that is
5  included in the government's -- roughly a little less than
6  five years, but a five-year period.
7           The segregated account was something that was
8  included in an audit of 2007 that there be a segregated
9  account.  So all the money need not have flowed through that
10 account in order for it to be considered properly spent on the
11 purpose for which it was intended.
12          THE COURT:  You wish to speak on this?
13          MR. SPECTOR:  A couple of thoughts, just briefly.
14          As to the last point, I think that that's not quite
15 accurate.  My understanding is that the first audit, the
16 auditor told the defendants that they should have been using a
17 segregated account.  And after that time, the defendant
18 started doing it.  But I don't think there was ever a
19 situation where before certain dates it was okay for them to
20 not use a segregated account.  I'm not sure how much of a
21 difference that's going to make in a practical matter.
22          Just another point worth noting.  And again, this is
23 something we can deal with, if necessary, at sentencing.  They
24 said that there are invoices.  And it was made clear in the
25 information that a lot of the invoices were actually fake.

1           So it's difficult, from our perspective, to really
2   respond because obviously we don't have the forensic
3   accountant's report.  And I certainly don't fault Mr. Radick
4   at all, he's new to the case.  But from our perspective, we
5   were hearing for months from prior counsel that there was this
6   forensic accountant analysis that was forthcoming.  And we
7   have never seen anything.
8           So, you know, we have a little concern that the
9   defendants may be attempting to manufacture complexity here as
10  a way of kind of obfuscating their full culpability.
11          Again, it's hard to respond in a vacuum.  So, you
12  know, we certainly understand Mr. Radick's position of wanting
13  to take time to do what he feel he needs to do.  But at the
14  end of the day, I'm not sure, from the government's
15  perspective, that the numbers are going to be altered.
16          MR. RADICK:  Your Honor, briefly.
17          First of all, this is an analysis that was not
18  initiated until recently.  And I can't really speak to why
19  that is except I'm here now and it was initiated recently.
20          I'm not sure that I understand the comment that
21  certain of the documents were fake.  I think that perhaps what
22  Mr. Spector is saying is that certain of the statements that
23  were submitted to the CACFP for specific meal counts were
24  inflated.  But I don't know that there's any reference -- and
25  I'm sure he will correct me if I'm wrong -- to actual forged

1  documents in any pleadings or in the complaint or in the
2  information, or anywhere in the case.  There's been no
3  allegation that any invoices themselves are not accurate.
4          I've also offered, I've mentioned them, to -- we
5  have these documents, to Mr. Spector.  And I'm happy to
6  provide him with a chance to see them.  When you see them,
7  you'll realize it's incredibly difficult to fabricate them.
8  Incredibly difficult if not actually impossible.
9          In any event, I just wanted to mention those things.
10 And also, with respect to the segregated account, that was in
11 an audit, as I said, from 2007.  That was first brought to
12 their attention, that they needed to have a segregated
13 account.  That was not the first audit.  I believe it was the
14 second audit that was done.
15         In any event, the lack of a segregated account is
16 not in any way a crime.  The lack of a segregated account may
17 be a violation of the rules.  But that's not, in and of
18 itself, any sign or proof or any part of the activity that's
19 led us to be in this precise spot.
20         THE COURT:  Well, I'm in the same position, probably
21 more so, than the government because my vacuum is a lot larger
22 than the government's vacuum since I really haven't seen any
23 of these records at all.
24         But I think in all fairness, given the fact that Mr.
25 Radick is fairly new entered into the case, He has at least

1  started to move the case forward, expeditiously it appears.
2  It doesn't make sense to rush through this only to find that
3  errors have been made and make things more complicated than
4  they need to be.
5            Especially when you're talking about fraud cases
6  where really the loss drives the guidelines and also drives
7  the restitution, it's important to get as accurate a picture
8  as we can.
9            Then, as with any other case, if there really is a
10 bigger disparity between what the government says should be
11 the loss amount or defense says, then we'll have a hearing if
12 we have to have a hearing.  We will do that.
13           But it probably makes sense to have the defense come
14 up with however it's going to be presented, a chart or a
15 report or however it's going to be presented, for the defense
16 and the government to consult with respect to that first and
17 then make submissions to probation.
18           Does that sound fair?
19           MR. SPECTOR:  That's fine from the government's
20 perspective.
21           THE COURT:  Okay.  You said around mid October,
22 Mr. Radick.  Would around October 17th, that's right smack in
23 the middle of the calendar.
24           MR. RADICK:  I understand that this analysis that
25 he's doing will not be completed until mid October.  And then,

1  of course, we would want to sit down and go through it,
2  review.  It wouldn't take very long, I would think, but we'd
3  want to review it.  Then I suggest we would sit down with
4  Mr. Spector, with the forensic accountant, depending on what
5  the circumstances may be, and explain any issues we have or
6  any arguments we have, see if we can work them out.
7              What I would propose is that we do our analysis
8  through the 15th or the 17th, somewhere in there.  I don't
9  have a calendar in front of me.  Within a week or two, or ten
10 days, somewhere in the middle, we would try to meet with
11 Mr. Spector.  And we would then report back to the Court as to
12 where we are.  Or to probation, as the case may be.
13             THE COURT:  Right about the middle will be about
14 October 17th, which is a Wednesday.  So if the defense has a
15 report ready, say, by the 26th?
16             MR. RADICK:  To provide to the government?
17             THE COURT:  To provide to the government.  Or by the
18 31st.  That would be about ten days.  Do you want to do it by
19 the 31st?
20             MR. RADICK:  That would be great.  Thank you, Your
21 Honor.
22             THE COURT:  So 10/31 for the defense forensic report
23 to the government.
24             Now, I don't know, Mr. Spector may want to have case
25 agents take a look at it or their own forensic analyst to take

1   a look at it.
2           What would your estimate be of how much time you
3   would need?
4           MR. SPECTOR:  Judge, it's a little difficult, in a
5   vacuum, because I don't know what the report is going to say.
6           THE COURT:  Why don't we do this.  Because it is
7   difficult to assess the nature of the evidence that is
8   involved here, what if the government provides the Court with
9   a status report by November 19th?
10          MR. SPECTOR:  That's fine, Judge.  Thank you.
11          THE COURT:  Okay.  In the meantime, have the
12  defendants been interviewed by probation?  And all the rest of
13  the probation report is about ready to go.  I think it's just
14  waiting for the financial information.
15          MR. RADICK:  My understanding is yes.  In fact,
16  they've met with and interviewed by probation.  A probation
17  officer has actually visited the schools.
18          Did a probation officer visit your home?
19          DEFENDANT FAN:  Yes.
20          MR. RADICK:  So the probation officer has been doing
21  a substantial amount on that score.  I think it's the
22  guidelines, loss issues that remain to be filled in.
23          THE COURT:  So why don't I get a status report from
24  the government on November 19th.  This way I'll have a more
25  realistic idea of what to tell probation as far as the

1  disclosure of the presentence report is concerned.  Then I
2  will just issue a scheduling order directing the presentence
3  report to be disclosed by a certain date.
4              Generally we don't issue the sentencing schedule
5  order until the presentence report has actually been disclosed
6  because it could be that maybe probation has questions and
7  they want to look at something that might extend it.  But at
8  least we can give probation a date for the disclosure once we
9  have the presentence report.  Then we'll set a scheduling
10 date.
11             If you look at my schedules, that will have -- I
12 built in the requisite Rule 32 period for objections to the
13 presentence report.  I do like to receive -- all of the
14 objections should be in writing to probation.  And I like to
15 get courtesy copies.  I leave it up to the attorneys as to
16 whether you want to post it on ECF.  You don't have to.  But I
17 do like to get a courtesy copy so I know what is pertinent in
18 the minds of the parties.
19             And also, any sentencing memoranda.  Just in terms
20 of the deadline for the sentencing memoranda, count back from
21 the date of sentence.  Don't include the date of sentence.
22 Don't include Saturdays.  Don't include holidays.
23             All of that is in my standard requirements in a
24 federal case, which is on the official court website.  If you
25 can't access it or you have any questions about it, contact my

U.S.A. v. FAN and SHEN                                                     18

1  deputy.
2          Of course, if there are any letters in support of
3  Ms. Fan or Mr. Shen would like to have included in the
4  sentencing memoranda, Ms. Fan and Mr. Shen, it's important to
5  work with your attorney on that.  Because he does not want to
6  be in a position, coming to Court very red-faced on the date
7  of sentence, saying I just got this pile of letters from my
8  clients and their family members and friends and community
9  people.
10         So you need to work with him on that, and cooperate
11 with him on that, if that's your intention to do that.  You
12 don't have to, but if that's something that you want to do.
13 It's difficult for me to look at things piecemeal.  I
14 certainly don't want to be in a position to look at something
15 the day of sentence.  I would like to read it in advance and
16 be able to consider everything.
17         Is there anything else that the parties want to
18 raise today?
19         MR. SPECTOR:  Not from the government, Your Honor.
20         THE COURT:  Obviously, if the schedule needs to be
21 extended.  We are happy to accommodate.  And then we'll just
22 take it from there.  The status report, I think I told you
23 November 19th.  I want to make sure I don't make a mistake in
24 the schedule again.
25         MR. RADICK:  Thank you very much, Your Honor.

RONALD E. TOLKIN, RPR, RMR, CRR
OFFICIAL COURT REPORTER

U.S.A. v. FAN and SHEN                                            19

1       THE COURT:  Again, my apologies.  And thank you all
2  very much for your patience.
3       MR. SPECTOR:  Thank you, Judge.
4       MR. RADICK:  Thank you, Judge.
5       (Matter concluded.)